# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 17-258V
Filed: May 31, 2023

| | | |
|---|---|---|
| * * * * * * * * * * * * | | |
| DIONNE EDWARDS, *on behalf of* | * | |
| *her minor son*, J.M.E., | * | |
| | * | |
| Petitioner, | * | |
| | * | UNPUBLISHED |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * | | |

*Milton Ragsdale, Esq.*, Ragsdale LLC, Birmingham, AL for petitioner.
*Christine Becer, Esq.*, US Department of Justice, Washington, DC, for respondent.

## DECISION ON JOINT STIPULATION[1]

**Roth**, Special Master:

On February 23, 2017, Dionne Edwards ["Ms. Edwards" or "petitioner"] filed a petition for compensation under the National Vaccine Injury Compensation Program[2] on behalf of her minor son, J.M.E. Petitioner alleges that J.M.E. developed transverse myelitis ("TM") after receiving the diphtheria-tetanus-acellular pertussis ("DTaP"), inactivated polio ("IPV"), and measles, mumps, rubella, and varicella ("MMRV") vaccines on July 29, 2016. Stipulation, filed May 31, 2023, at ¶¶ 1-4. Respondent denies that any of the aforementioned immunizations caused J.M.E.'s injury. Stipulation at ¶ 6.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

1

Nevertheless, the parties have agreed to settle the case. On May 31, 2023, the parties filed a joint stipulation agreeing to settle this case and describing the settlement terms. ECF No. 76.

Respondent agrees to issue the following payment:

a) **A lump sum of $293,303.11,** representing compensation for first year life care expenses and pain and suffering, **in the form of a check payable to petitioner as guardian/conservator of the estate of J.M.E. for the benefit of J.M.E.** No payments shall be made until petitioner provides response with documentation establishing that she has been appointed as guardian/conservator of J.M.E.'s estate;

b) **A lump sum of $22,578.14,** representing compensation for past unreimbursable expenses, **in the form of a check payable to petitioner, Dionne Edwards;**

c) **A lump sum of $62,361.65,** representing reimbursement of an Alabama Medicaid lien for services rendered on behalf of J.M.E., **in the form of a check payable jointly to petitioner and**

> Alabama Medicaid Subrogation Unit
> PO Box 240756
> Montgomery, AL 36124
> Medicaid ID #: 530000429425
> Attn: Tammy Goodson

d) An amount sufficient to purchase the annuity contract described in paragraph 10 of the attached stipulation, paid to the life insurance company from which the annuity will be purchased.

These amounts represent compensation for all damages that would be available under § 300aa-15(a).

I adopt the parties' stipulation attached hereto, and award compensation in the amount and on the terms set forth therein. The clerk of the court is directed to enter judgment in accordance with this decision.[3]

**IT IS SO ORDERED.**

> **s/ Mindy Michaels Roth**
> Mindy Michaels Roth
> Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

OFFICE OF SPECIAL MASTERS

| | |
|---|---|
| DIONNE EDWARDS, on behalf of her minor son J.M.E., <br><br> Petitioner, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | ) ) ) ) ) ) No. 17-258V ) Special Master Roth ) ECF ) ) ) ) |

## STIPULATION

The parties hereby stipulate to the following matters:

1. On behalf of her son, J.M.E., petitioner filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to 34 (the "Vaccine Program"). The petition seeks compensation for injuries allegedly related to J.M.E.'s receipt of the diphtheria-tetanus-acellular pertussis ("DTaP")/inactivated polio vaccine ("IPV") and measles, mumps, rubella, varicella ("MMRV") vaccine, which vaccines are contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2. J.M.E. received his immunizations on July 29, 2016.

3. The vaccines were administered within the United States.

4. Petitioner alleges that the vaccines caused J.M.E. to suffer from transverse myelitis ("TM"), and that J.M.E. experienced residual effects of this injury for more than six months.

5. Petitioner represents that there has been no prior award or settlement of a civil action for damages on behalf of J.M.E. as a result of his condition.

1

6. Respondent denies that the vaccines caused J.M.E. to suffer from TM or any other injury.

7. Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioner has filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

> a. A lump sum of $293,303.11, which amount represents compensation for first year life care expenses and pain and suffering, in the form of a check payable to petitioner as guardian(s)/conservator(s) of the estate of J.M.E. for the benefit of J.M.E. No payments shall be made until petitioner provides respondent with documentation establishing that she has been appointed as guardian(s)/conservator(s) of J.M.E.'s estate;
>
> b. A lump sum of $22,578.14, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to petitioner, Dionne Edwards;
>
> c. A lump sum of $62,361.65,[1] which amount represents reimbursement of an Alabama Medicaid lien for services rendered on behalf of J.M.E., in the form of a check payable jointly to petitioner and
>
> 
> Alabama Medicaid Subrogation Unit<br>
> P.O. Box 240756<br>
> Montgomery, Alabama 36124<br>
> Case No: 177670<br>
> Medicaid ID #: 530000429425<br>
> Attn: Tammy Goodson
> 
>
> Petitioner agrees to endorse this check to Alabama Medicaid Subrogation Unit.

---

[1] This amount represents full satisfaction of any right of subrogation, assignment, claim, lien, or cause of action that the Alabama Medicaid Agency may have against any individual as a result of any Medicaid payments made to or on behalf of J.M.E. as a result of his alleged vaccine-related injury suffered as a result of the July 29, 2016, vaccines, under Title XIX of the Social Security Act. *See* 42 U.S.C. § 300aa-15(g),(h).

  d. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

These amounts represent compensation for all damages that would be available under 42 U.S.C. §300aa-15(a).

  9. The Life Insurance Company must have a minimum of $250,000,000.00 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

  a. A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

  b. Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

  c. Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

  d. Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

  10. The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of J.M.E., pursuant to which the Life Insurance Company will agree to make payments periodically to petitioner, as the court-appointed guardian(s)/conservator(s) of the estate of J.M.E. for the following items of compensation:

  a. For future unreimbursable Insurance Deductible expenses, beginning on the first anniversary of the date of judgment, an annual amount of $1,500.00 to be paid up to the anniversary of the date of judgment in year 2077, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

  b. For future unreimbursable Medicare Part B Deductible expenses, beginning on the anniversary of the date of judgment in year 2077, an annual amount of $226.00 to be paid for the remainder of J.M.E.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

  c. For future unreimbursable Medicare Supplement G expenses, beginning on the anniversary of the date of judgment in year 2077, an annual amount of $1,608.48 to be paid for the remainder of J.M.E.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

d. For future unreimbursable Primary Care Physician, Neurology, and Orthopaedics expenses, beginning on the first anniversary of the date of judgment, an annual amount of $230.00 to be paid up to the anniversary of the date of judgment in year 2034. Then, beginning on the anniversary of the date of judgment in year 2034, an annual amount of $130.00 to be paid up to the anniversary of the date of judgment in year 2077, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

e. For future unreimbursable Counseling expenses, on the first anniversary of the date of judgment, a lump sum of $720.00. Then, beginning on the anniversary of the date of judgment in year 2025, an annual amount of $360.00 to be paid up to the anniversary of the date of judgment in year 2027. Then, on the anniversary of the date of judgment in year 2028, a lump sum of $360.00. Then, on the anniversary of the date of judgment in year 2030, a lump sum of $360.00. Then, on the anniversary of the date of judgment in year 2034, a lump sum of $360.00. Then, on the anniversary of the date of judgment in year 2038, a lump sum of $360.00, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

f. For future unreimbursable Vitamin D, Mederma Scar Gel, Physical Therapy and Occupational Therapy Evaluations, Primary Care Physician Mileage, Neurology Mileage, Orthopaedics Mileage, Counseling Mileage, Physical Therapy and Occupational Therapy Mileage, and High Five Constraint Camp Mileage expenses, on the first anniversary of the date of judgment, a lump sum of $979.11. Then, beginning on the anniversary of the date of judgment in year 2025, an annual amount of $513.99 to be paid up to the anniversary of the date of judgment in year 2027. Then, on the anniversary of the date of judgment in year 2027, a lump sum of $503.43. Then, on the anniversary of the date of judgment in year 2028, a lump sum of $513.99. Then, on the anniversary of the date of judgment in year 2029, a lump sum of $434.79. Then, on the anniversary of the date of judgment in year 2030, a lump sum of $462.51. Then, on the anniversary of the date of judgment in year 2031, a lump sum of $451.95. Then, beginning on the anniversary of the date of judgment in year 2032, an annual amount of $383.31 to be paid up to the anniversary of the date of judgment in year 2034. Then, on the anniversary of the date of judgment in year 2034, a lump sum of $260.99. Then, beginning on the anniversary of the date of judgment in year 2035, an annual amount of $181.79 to be paid up to the anniversary of the date of judgment in year 2038. Then, on the anniversary of the date of judgment in year 2038, a lump sum of $260.99. Then, beginning on the anniversary of the date of judgment in year 2039, an annual amount of $181.79 to be paid up to the anniversary of the date of judgment in year 2047. Then, on the anniversary of the date of judgment in year 2047, a lump sum of $250.43. Then, beginning on the anniversary of the date of judgment in year 2048, an annual amount of $181.79 to be paid up to the anniversary of the date of judgment in year 2052. Then, on the anniversary of the date of judgment in year 2052, a lump sum of $250.43. Then, beginning on the anniversary of the date of judgment in year 2053, an annual amount of $181.79 to be paid up to the anniversary of the date of judgment in year 2062. Then, on the anniversary of the date of judgment in year 2062, a lump sum of $250.43. Then, beginning on the anniversary of

the date of judgment in year 2063, an annual amount of $181.79 to be paid up to the anniversary of the date of judgment in year 2072. Then, on the anniversary of the date of judgment in year 2072, a lump sum of $250.43. Then, beginning on the anniversary of the date of judgment in year 2073, an annual amount of $181.79 to be paid up to the anniversary of the date of judgment in year 2077. Thereafter, beginning on the anniversary of the date of judgment in year 2077, an annual amount of $101.79 to be paid for the remainder of J.M.E.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

g. For future unreimbursable Physical Therapy and Occupational Therapy expenses, on the first anniversary of the date of judgment, a lump sum of $1,334.00. Then, on the anniversary of the date of judgment in year 2027, a lump sum of $552.00. Then, on the anniversary of the date of judgment in year 2031, a lump sum of $552.00. Then, on the anniversary of the date of judgment in year 2047, a lump sum of $552.00. Then, on the anniversary of the date of judgment in year 2052, a lump sum of $552.00. Then, on the anniversary of the date of judgment in year 2062, a lump sum of $552.00. Then, on the anniversary of the date of judgment in year 2072, a lump sum of $552.00, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

h. For future unreimbursable High Five Constraint Camp expenses, beginning on the first anniversary of the date of judgment, an annual amount of $275.00 to be paid up to the anniversary of the date of judgment in year 2030, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

i. For future unreimbursable Aqua Therapy expenses, beginning on the first anniversary of the date of judgment, an annual amount of $150.00 to be paid for the remainder of J.M.E.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

j. For future unreimbursable Fitness & Aqua Therapy expenses at the YMCA, beginning on the first anniversary of the date of judgment, an annual amount of $768.00 to be paid up to the anniversary of the date of judgment in year 2028. Then, beginning on the anniversary of the date of judgment in year 2028, an annual amount of $240.00 to be paid up to the anniversary of the date of judgment in year 2031. Then, beginning on the anniversary of the date of judgment in year 2031, an annual amount of $420.00 to be paid up to the anniversary of the date of judgment in year 2042. Then, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $660.00 to be paid up to the anniversary of the date of judgment in year 2072. Thereafter, beginning on the anniversary of the date of judgment in year 2072, an annual amount of $624.00 to be paid for the remainder of J.M.E.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

k. For future unreimbursable Hippotherapy expenses, beginning on the first anniversary of the date of judgment, an annual amount of $1,200.00 to be paid up to the anniversary

of the date of judgment in year 2079, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

l. For future unreimbursable adaptable bed expenses, on the anniversary of the date of judgment in year 2052, a lump sum of $1,500.00. Thereafter, beginning on the anniversary of the date of judgment in year 2053, an annual amount of $150.00 to be paid for the remainder of J.M.E.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

m. For future unreimbursable Electric Scooter, Power Scooter Lift, Manual Wheelchair, Transfer Chair, Commode Seat Cushion, Adaptive Device, Computer Game/Device/Adaptation, Desk Chair with Lumbar Support, Ergonomic Desk, Medical Alert System, and Handheld Shower expenses, on the first anniversary of the date of judgment, a lump sum of $1,367.40. Thereafter, beginning on the anniversary of the date of judgment in year 2025, an annual amount of $1,115.40 to be paid for the remainder of J.M.E.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

n. For future unreimbursable AFO expenses, beginning on the first anniversary of the date of judgment, an annual amount of $400.00 to be paid up to the anniversary of the date of judgment in year 2035. Then, beginning on the anniversary of the date of judgment in year 2035, an annual amount of $200.00 to be paid up to the anniversary of the date of judgment in year 2077, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

o. For future unreimbursable Babysitter/Driver expenses, beginning on the first anniversary of the date of judgment, an annual amount of $3,536.00 to be paid up to the anniversary of the date of judgment in year 2027. Then, on the anniversary of the date of judgment in year 2027, a lump sum of $7,072.00, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

p. For future unreimbursable Companion Care expenses, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $3,796.00 to be paid up to the anniversary of the date of judgment in year 2078, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

q. For future unreimbursable Home Health Aide expenses, beginning on the anniversary of the date of judgment in year 2078, an annual amount of $12,480.00 to be paid up to the anniversary of the date of judgment in year 2088. Thereafter, beginning on the anniversary of the date of judgment in year 2088, an annual amount of $20,800.00 to be paid for the remainder of J.M.E.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

r. For future unreimbursable Home Modification expenses, on the anniversary of the date of judgment in year 2038, a lump sum of $15,000.00. Then, on the anniversary of the

date of judgment in year 2077, a lump sum of $15,000.00, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

s. For future unreimbursable Hotel for High Five Constraint Camp and Food Allowance for Camp expenses, beginning on the first anniversary of the date of judgment, an annual amount of $1,610.00 to be paid up to the anniversary of the date of judgment in year 2030, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the petitioner in monthly, quarterly, annual, or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the petitioner and do not require that the payment be made in one annual installment. The petitioner will continue to receive the annuity payments from the Life Insurance Company only so long as J.M.E. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services, and the Life Insurance Company shall be provided within twenty (20) days of J.M.E.'s death.

    11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

    12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioners have filed both a proper and timely election to receive compensation pursuant to

42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

13. Petitioner and her attorney represent that compensation to be provided pursuant to this Stipulation is not for any items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), to the extent that payment has been made or can reasonably be expected to be made under any State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or by entities that provide health services on a pre-paid basis.

14. Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15. The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees and litigation costs, and past unreimbursed expenses, the money provided pursuant to this Stipulation will be used solely for the benefit of J.M.E. as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16. Petitioner represents that she presently is, or within 90 days of the date of judgment will become, duly authorized to serve as guardian(s)/conservator(s) of J.M.E.'s estate under the laws of the State of Alabama. No payments pursuant to this Stipulation shall be made until petitioner provides the Secretary with documentation establishing her appointment as guardian(s)/conservator(s) of J.M.E.'s estate. If petitioner is not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of J.M.E. at the time a

payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of J.M.E. upon submission of written documentation of such appointment to the Secretary.

17. In return for the payments described in paragraphs 8 and 12, petitioner, in her individual capacity and as legal representative of J.M.E., on behalf of herself, J.M.E., and his heirs, executors, administrators, successors or assigns, does forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300 aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal injuries to or death of J.M.E. resulting from, or alleged to have resulted from, the vaccinations administered on July 29, 2016, as alleged by petitioner in a petition for vaccine compensation filed on or about February 23, 2017, in the United States Court of Federal Claims as petition No. 17-258V.

18. If J.M.E. should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21. Petitioner hereby authorizes respondent to disclose documents filed by petitioner in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22. This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that the vaccines caused J.M.E. to suffer TM or any other injury or condition.

23. All rights and obligations of petitioners hereunder shall apply equally to petitioner's heirs, executors, administrators, successors, and/or assigns as legal representatives of J.M.E.

END OF STIPULATION

/

/

/

/

/

/

Respectfully submitted,

**PETITIONER:**

*[signature]*
DIONNE EDWARDS

**ATTORNEY OF RECORD FOR PETITIONER:**

*[signature]*
M. CLAY RAGSDALE, ESQ.
Ragsdale L.L.C.
517 Beacon Parkway West
Birmingham, Alabama 35209
Tel: (205) 290-6800
Email: clay@ragsdalellc.com

**AUTHORIZED REPRESENTATIVE OF THE SECRETARY OF HEALTH AND HUMAN SERVICES:**

by Henry P. Mcmillan -S3  *(Digitally signed by Henry P. Mcmillan -S3  Date: 2023.05.05 09.38.12 -04'00')*
CDR GEORGE REED GRIMES, MD, MPH
Director, Division of Injury
 Compensation Programs
Health Systems Bureau
Health Resources and Services
 Administration
U.S. Department of Health
 and Human Services
5600 Fishers Lane, 08N146B
Rockville, MD 20857

Dated: 5/31/23

**AUTHORIZED REPRSENTATIVE OF THE ATTORNEY GENERAL:**

*[signature]*
HEATHER L. PEARLMAN
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

**ATTORNEY OF RECORD FOR RESPONDENT:**

*[signature]*
CHRISTINE M. BECER
Trial Attorney
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 616-3665
Christine.M.Becer@usdoj.gov

11